IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, Personal Representative
of the Estate of Nickolas James Garcia, deceased;
KRISTAL DARNELL, individually and on behalf
of minor M.G., and JONI DURAN, on behalf of
minor N.G.,

        Plaintiffs,

v.

                                                1:23-cv-00554-WJ-JMR

ELIAS S. SISNEROS, Bernalillo County
Metropolitan Detention Center Officer,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Joint Motion of Parties to Approve Minor Settlement, filed on January 4, 2024. Doc. 30. The Honorable Chief District Judge William P. Johnson referred the motion to me in accordance with 28 U.S.C.§ 636(b)(1)(B) and (b)(3) "to conduct hearings, if warranted, including fairness and evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the Joint Motion." Doc. 32.

The beneficiaries of the plaintiff Estate of Nickolas James Garcia are two minor children, N.G. and M.G. The Court, therefore, held a fairness hearing on March 18, 2024, to determine whether the global settlement is in the best interests of the minor children and whether it should be approved. *See* Doc. 46. The Court appointed Gabrielle Valdez as Guardian Ad Litem ("GAL"), Doc. 29, and Ms. Valdez filed her redacted sealed report on March 13, 2024, Doc. 40, and her unredacted sealed report on March 14, 2024, Doc. 43. At the fairness hearing, Robert Gentile appeared on behalf of plaintiffs; Daniel Macke appeared on behalf of defendant Elias

Sisneros, and Frank Apodaca appeared on behalf of the Board of County Commissioners of the County of Bernalillo ("the County").[1] *See* Doc. 46. Plaintiff Dennis Murphy; Plaintiff Joni Duran, the mother of N.G.; Plaintiff Kristal Darnell-Sandoval, the mother of M.G.; and Gabrielle Valdez, the GAL, were also present. *See id.* The GAL filed a Supplemental Guardian ad Litem Report on March 20, 2024. Doc. 48. After carefully considering the GAL report, the GAL supplemental report, the information provided by the GAL at the hearing, the information from counsel, and the testimony of Ms. Duran and Ms. Darnell-Sandoval, I find that the settlement agreement is fair and in the best interests of the minor children, and I recommend approving it.

I.     **Factual Background**

This case resulted from the death of Nickolas James Garcia while in custody at the Metropolitan Detention Center ("MDC") located in Albuquerque, New Mexico. On October 3, 2020, around 7:47 p.m., Mr. Garcia was arrested on charges of aggravated DWI-1, careless driving, failure to keep the vehicle within traffic lane, and improper turn. Doc. 43 at 8. Upon arrest, his blood alcohol concentration was .234—nearly three times the legal limit to drive a vehicle. *Id*. Mr. Garcia was booked into MDC at 10:53 p.m. *Id*. At the time of his booking, Mr. Garcia admitted that he drank four or more times per week, that he drank six or more drinks on one occasion on a daily basis for the last year, and that on a typical day in the past year he would have ten or more alcoholic beverages. *Id*. Mr. Garcia also admitted that he drank a pint of alcohol

---

[1] The Board of County Commissioners of the County of Bernalillo is not named as a defendant in the federal matter, No. 23-554 WJ/JMR, but is a named defendant in a parallel state matter, *Dennis Murphy, Personal Representative to the Estate of Nickolas James Garcia, deceased, et al. v. Board of County Commissioners of the County of Bernalillo, et al.*, No. D-202-CV-202205405. Counsel for the County appeared at the fairness hearing as the tentative settlement in the federal case is global and is meant to resolve all claims against both Mr. Sisneros in the federal matter and the Board of County Commissioners in the state matter.

or more on a daily basis. *Id*. An intake nurse for MDC initiated a "Withdrawal Treatment and Order Form" noting Mr. Garcia's history of withdrawal. *Id*.

Mr. Garcia was placed on "Alcohol Watch" and sent to "special housing" beginning at approximately 8:40 a.m. on October 4, 2020. *Id*. at 9-10. Mr. Sisneros was an MDC corrections officer and was assigned to work in the pod where Mr. Garcia was housed. *Id*. at 10. Over the course of the next six hours, Mr. Sisneros documented that he completed fourteen welfare checks on the inmates, including Mr. Garcia. *Id*. at 11. However, an internal audit revealed the Mr. Sisneros had completed only one check. *Id*.

Mr. Garcia's entire time in special housing was captured on video. Notably, Mr. Garcia is seen on video moving in his bed, rubbing his face and straightening his legs at 2:50 p.m. *Id*. at 16. At 2:52 p.m., Mr. Sisneros appears to be asleep at his desk. *Id*. Although Mr. Sisneros moves at 2:53 p.m., he again appears asleep at 2:54 p.m. *Id*. At 2:54 p.m., Mr. Garcia rolls onto his back, and at 2:55 p.m., his body makes tonic (stiffening) and clonic (twitching) movements. *Id*. Mr. Sisneros continues to appear asleep for the next three to four minutes. *Id*. Mr. Garcia's last movements are seen at 3:01 p.m. *Id*.

At approximately 3:12 p.m., Mr. Garcia was found unresponsive in his bed by the corrections officer who relieved Mr. Sisneros from his shift. *Id*. at 17. Over the next thirty-nine minutes, MDC and medical personal tried but failed to revive Mr. Garcia. *Id*. He was declared dead at 3:51 p.m. *Id*. Mr. Garcia's cause of death was likely related to his alcohol abuse, which would have predisposed him to "fatal abnormal heart beats," as well as "life-threatening withdrawal symptoms." *Id*. At the time of his death, Mr. Garcia was thirty-five years old. He had two heirs, his minor children M.G. and N.G.

Plaintiff Dennis Murphy, as Personal Representative of the Wrongful Death Estate of Nickolas James Garcia, brought claims against Mr. Sisneros for deliberate indifference to serious medical need, conspiracy to unlawfully interfere with medical treatment, and inadequate housing. Docs. 1, 45. Individual loss of consortium claims were also brought on behalf of Mr. Garcia's minor children and his fiancée at the time of his death, Ms. Darnell-Sandoval. *Id*. In a parallel state matter, plaintiffs also brought claims for medical malpractice; negligence; negligent operation of a medical facility; negligent operation or maintenance of a building, public park, machinery, equipment, or furnishings; and negligent hiring, training, and supervision against the County.[2] *Dennis Murphy, Personal Representative to the Estate of Nickolas James Garcia, deceased, et al. v. Board of County Commissioners of the County of Bernalillo*, et al., No. D-202-CV-202205405, First Amended Complaint, filed September 19, 2022.

## II.   Legal Standard

The Court reviews settlements involving minor children for fairness. *See Thompson v. Maxwell Land-Grant & Railway Co.,* 168 U.S. 451, 463-65 (1897). Before approving such an agreement, the Court must ensure that the interests of the child or children will be adequately protected. *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (courts have a general duty to protect the interests of minors); *Salas v. Brigham*, No. 1:08-cv-01184-JB-RLP, 2010 WL 11601205, at *2 (D.N.M. Dec. 22, 2010) (unpublished) ("New Mexico courts and federal courts have traditionally supervised settlements benefitting minors and incapacitated adults, reviewing the proposed settlement to ascertain whether the agreement promotes the best interest of the minor or

---

[2] Centurion Detention Health Services, LLC was a second named defendant in the state matter, but it settled with plaintiffs separately and are not a part of this fairness evaluation. *Dennis Murphy, Personal Representative to the Estate of Nickolas James Garcia, deceased, et al. v. Board of County Commissioners of the County of Bernalillo, et al.*, No. D-202-CV-202205405, Order of Dismissal with Prejudice, filed January 16, 2024.

incapacitated beneficiary."). When interests of minors are at stake, the trial judge has an obligation to see that the children were properly represented by their representatives and by the Court. *United States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967).

In deciding whether to approve a settlement, the Court must determine whether the settlement satisfies four factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). These factors are:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Id*. (citation omitted).

### III.   Analysis

At the fairness hearing on March 18, 2024, the GAL presented her report, and both Krystal Darnell-Sandoval and Joni Duran testified. Counsel also made their presentations and answered my questions. I considered the evidence and information presented during the hearing on March 18, 2024. I also considered the GAL report and the basic terms of the proposed settlement agreement. I find that the proposed settlement satisfies the four *Jones* factors, and that the settlement is in the best interests of the minor children.

1.   *Whether the Proposed Settlements were Fairly and Honestly Negotiated*

I find that "the proposed settlement was fairly and honestly negotiated." *See Jones*, 741 F.2d at 324.

The parties engaged in a five-hour-and-fifteen-minute mediation with me, the assigned federal magistrate judge, on December 14, 2023. *See* Doc. 26. A tentative, global agreement was

made at the settlement conference, and the parties worked to formalize the settlement agreement after it concluded. Mr. Gentile stated at the mediation that he planned to amend the initial complaint to add Ms. Duran as the guardian of N.G., and he did so on March 14, 2024. Doc. 45. During the mediation, I independently assessed the viability of the claims of the estate, and the additional loss of consortium claims by M.G., N.G., and Ms. Darnell-Sandoval. Mr. Gentile also counseled Ms. Duran and Ms. Darnell-Sandoval about potential conflicts of interest, and they willingly signed a document waiving them. After the settlement conference, the parties apportioned amounts from the global settlement based upon a similar apportionment from the state court settlement with the medical provider, Centurion Detention Health Services, LLC. The parties determined that the vast majority of the funds would go to Mr. Garcia's estate for the benefit of his children and the remaining portion would go to Ms. Duran-Sandoval for her loss of consortium claim. The GAL found that the way the various claims were handled at the mediation and the final apportionment, as adjusted by the GAL (Doc. 48), resulted in a settlement to the estate (and the minors) that was fairly and honestly negotiated. The Court agrees.

    This Court need only assess the reasonableness of the settlement with regard to the minor children. As related to the settlement for the minor children, Ms. Duran and Ms. Darnell-Sandoval testified that they understood and participated in the formal mediation, and in the ongoing negotiations. They understood and agreed to the final settlement amounts after consulting with their counsel. They also understood that they were not required to settle the case, and that they could have proceeded with the litigation if they preferred. Ms. Duran and Ms. Darnell-Sandoval testified that they believed the settlements were fair and reasonable, that they were not threatened or coerced into agreeing to the settlement amounts, and that they wanted the Court to approve the overall settlement agreement. They testified that they understand that the

settlement would resolve all of N.G's and M.G.'s claims, both as individuals and as the beneficiaries to the estate of Nickolas James Garcia, against Mr. Sisneros, as well as the County. Ms. Duran and Ms. Darnell-Sandoval both testified that they understand that, with the exception of a small amount of funds that will go to the repair of N.G.'s vehicle and to extracurricular activities for M.G., the settlement proceeds will be placed into separate structured annuities for N.G's and M.G.'s sole benefit, and that N.G. and M.G. will not have access to the funds except as illustrated in the "Proposed Structured Settlement Annuity"[3] for each minor child in the GAL's Supplemental Report. *See* Doc. 48 at 5-6. Based on these facts, the Court finds that the settlement was honestly and fairly negotiated.

2. *Whether Serious Questions of Law and Fact Place the Outcome of this Litigation in Doubt*

I find that "serious questions of law and fact place the outcome of this litigation," and the state court litigation, "in doubt." *See Jones*, 741 F.2d at 324.

At the settlement conference and during the fairness hearing, the GAL and the defendants agreed that if this case proceeded to trial, it was likely that one or more defendants may have been found liable. The GAL also agreed, however, that although Mr. Sisneros was trained on the risks associated with inmates like Mr. Garcia, given the relatively short time frame between which Mr. Garcia was seen moving around the pod and in his bed and when Mr. Garcia became unresponsive, a jury could find that Mr. Sisneros' actions, or lack thereof, may *not* have contributed to Mr. Garcia's ultimate passing. Doc. 43 at 24. Further, damages were potentially problematic as Mr. Garcia was an admitted chronic alcoholic with cardiovascular disease. *Id*. at 25. Given Mr. Garcia's unclear life expectancy and no information about his potential future lost

---

[3] The parties chose this option for each child out of the options set forth in the GAL's unredacted report. *See* Doc. 43, Exhibit B.

wages, even with a liability finding, it is unclear how a jury would value this case. Thus, because of the serious questions of law and fact as to the liability of some defendants, and the inherent risks involved in taking any case to trial, I find that there are serious questions of law and fact that placed the outcome of this litigation in doubt.

    3. *Whether the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation*

I find that "the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *See Jones*, 741 F.2d at 324.

The GAL noted that counsel were able to negotiate an advantageous settlement relatively early in the case, saving significant costs. Doc. 43 at 26. The agreed-upon settlement also eliminates the uncertainty of a jury verdict and the potential delays associated with an appeal. *Id*. Wrongful death suits can be particularly lengthy, burdensome, and emotional for all involved. Testifying in court is often traumatic for those trying to cope with the loss of a loved one. Finally, all but a very small amount of the proceeds for the minors will be placed in a structured settlement annuity with favorable rates and significant tax benefits. *Id*. Given the uncertainty of protracted litigation, the negotiated lucrative settlement, and the way in which the settlement funds are going to be held and distributed to the minors through a profitable structure, the Court finds that the value of immediate recovery significantly outweighs the mere possibility of future relief after protracted and expensive litigation.

    4. *The Judgment of the Parties that the Settlement is Fair and Reasonable*

The parties, and the Court, agree "that the settlement is fair and reasonable." *See Jones*, 741 F.2d at 324.

All counsel, the GAL, Ms. Duran, and Ms. Darnell-Sandoval testified and/or stated that they believed the settlement is fair and reasonable and in N.G.'s and M.G.'s best interests. M.G.'s and N.G.'s settlement funds will flow entirely through the estate, as opposed to their guardians. The GAL recommended and provided multiple options for a structured annuity for each minor child. Doc. 43, Exhibit B. The GAL's proposal protects the settlement funds and ensures that the funds will be available when each child turns eighteen. The final structures provide financial support for each minor for life, with guaranteed payments for both N.G and M.G. for forty years and thirty-five years, respectively. Ms. Duran and Ms. Darnell-Sandoval testified that they each understand that these funds may be used only for N.G.'s and M.G.'s benefit. The settlement funds allocated to the children will be disbursed as set forth in Sealed Exhibit 1, which I fully incorporate into this PFRD by reference.

The GAL also reviewed the attorney's fees that will be paid out of the settlement funds. The fee agreement in this case provided for a 35% contingency fee, which is within the customary range of contingency fees in the community. In addition, Mr. Gentile agreed to reduce his contingency fee to 33.33%, which directly benefits the estate and thereby the minor beneficiaries. The GAL reviewed the work that Mr. Gentile and his firm performed on the case, and she found the attorney's fees and costs were fair and reasonable. The Court agrees. The Court also reviewed the costs incurred as set forth in the GAL report and Supplement, Docs. 43, 48, and finds that they were necessary and are reasonable. The Court also notes that the GAL suggested, and the parties agreed, that Ms. Darnell-Sandoval pay the incurred costs from her own loss of consortium claim. Ms. Darnell-Sandoval's concession further benefits the minors in this case. The Court therefore finds that the attorney's fees and costs are reasonable and should

be paid from the settlement funds at set forth at page 27 of the GAL report and pages 2 and 3 of the GAL's Supplement. *See* Doc. 43 at 27; Doc. 48 at 2-3.

As set forth above, the *Jones* factors are satisfied. Therefore, the settlement is fair and reasonable. I recommend that the Court approve the proposed settlement between plaintiff and Defendant Sisneros. Specifically, the total settlement amount is approved, the allocation and distribution of the settlement proceeds as outlined in the GAL report and supplement is approved, and the payment of plaintiff's attorney's fees as outlined in the GAL report is approved. I recommend the Court release Ms. Valdez from her duties as guardian ad litem.

## IV. Recommendations

In summary, I recommend approving the allocation and distribution of the settlement proceeds and the payment of plaintiff's attorney's fees and costs as outlined in the GAL report, the GAL supplement and in Sealed Exhibit 1. *See* Docs. 43, 48. I further recommend releasing Ms. Valdez from her duties as guardian ad litem.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id*. In other words, if no objections are filed, no appellate review will be allowed.

JENNIFER M. ROZZONI
United States Magistrate Judge